UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SHAUNA MARIE GROSS, | 4:24-CV-04076-KES |
| Movant, | |
| | REPORT AND RECOMMENDATION |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## INTRODUCTION

This matter is before the court on the motion of Shauna Marie Gross, a person incarcerated pursuant to a federal judgment of conviction, to vacate, correct, or set aside her sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[1]  Ms. Gross represents herself.

Now pending is a motion by the United States of America ("government") to dismiss Ms. Gross' motion without holding an evidentiary hearing.  See Docket No. 38.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and DSD LR 72.1.

---

[1] Documents cited from this civil habeas file will be cited using the court's assigned docket number.  Documents from Ms. Gross' underlying criminal case, United States v. Gross, 4:21-CR-40169-KES-4 (D.S.D.), will be cited using the court's assigned docket number preceded by "CR."

## FACTS

**A.    Indictment and Pretrial**

Ms. Gross was indicted on charges of conspiracy to distribute methamphetamine along with her son, Sean Richard Gross, Rusty James Driscoll, and Jessica Ann Johnson.  CR Docket No. 1; <u>see</u> CR Docket No. 336 at 11:25—12:1.  There were numerous other defendants who were alleged to be co-conspirators in the drug distribution who were charged in other indictments.  These defendants included Christopher Daniels and his wife, Shaunna Lynn Daniels.  <u>See</u> <u>United States v. Daniels</u>, 4:21-CR-40164-KES (D.S.D.); CR Docket No. 318 at p. 2.

Ms. Gross was arrested in the District of Arizona and appeared before a federal magistrate judge there, who ordered Ms. Gross to be transported by the United States Marshals Service to this district.  <u>See</u> CR Docket No. 7 at p. 6 (Dec. 21, 2021, order Commitment to Another District).  Ms. Gross arrived in this district on February 2, 2022, and had an initial appearance here on the indictment the following day, February 3.  CR Docket No. 29.  At that time, the court appointed attorney Edward Angel to represent Ms. Gross.  CR Docket No. 30.  Ms. Gross was released with conditions at that time.  CR Docket No. 31.

A superseding indictment was filed March 1, 2022, but the charge against Ms. Gross did not change—she was charged in both indictments with conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine.  <u>Compare</u> CR Docket No. 1 <u>with</u> CR Docket No. 70.

Co-defendant Jessica Johnson moved to continue the dates in the scheduling order, including the trial date, on March 23, 2022. CR Docket No. 66. Ms. Johnson's motion indicated that Ms. Gross did not object to the continuance. Id. The court granted that motion. CR Docket No. 68.

Similarly, co-defendant Brandie Rinnet (who was added as a defendant in the superseding indictment) moved for a continuance in May 2022, reciting the fact that Ms. Gross did not object to the continuance. CR Docket No. 88. The court also granted that motion. CR Docket No. 90.

Defendant Johnson again moved for a continuance to which Ms. Gross did not object, but Ms. Rinnet did. CR Docket No. 111. The court denied this motion. Docket No. 117.

Then co-defendant Rusty Driscoll moved for a continuance and that motion was granted. CR Docket Nos. 118 & 121. Mr. Driscoll then had a change of counsel and new counsel for Mr. Driscoll moved for a continuance, which was granted. CR Docket Nos. 122, 124, 128 & 130.

Sean Gross then entered into a plea agreement with the government on approximately the one-year anniversary of the indictment. CR Docket No. 131. This was followed within the next month by Brandie Rinnet and Jessica Johnson also entering into plea agreements. CR Docket Nos. 137 & 144. This left only Ms. Gross and Rusty Driscoll as the remaining defendants on their indictment.

On February 28, 2022, Rusty Driscoll filed another motion for a continuance reciting the fact that Ms. Gross did not object. CR Docket No. 150. The court denied this motion. CR Docket No. 153.

Mr. Driscoll renewed his motion, again stating that Ms. Gross did not object. CR Docket No. 156. The court granted this motion after holding a status conference at which Ms. Gross' counsel was present. CR Docket Nos. 159 & 160.

Jury trial for both defendants was set to begin May 30, 2023. CR Docket No. 159. Meanwhile, co-defendants Rinnet and Gross were sentenced in April 2023. CR Docket Nos. 182 & 183.

Ms. Gross filed her own motion to continue the trial date on May 1, 2023, reciting that Driscoll had no objection. CR Docket No. 196. This motion was accompanied by a statement signed by Ms. Gross saying she had been advised of her Speedy Trial Act rights and her Sixth Amendment constitutional right to a speedy trial and she was freely, voluntarily, and with full knowledge waiving those rights. CR Docket No. 197. In addition to this public statement, Ms. Gross filed an affidavit under seal telling the court she was also requesting the continuance of the trial date due to various health issues she was suffering from. CR Docket No. 198-1. The court granted the motion and moved the trial date to August 1, 2023. CR Docket No. 208. Co-defendant Jessica Johnson was sentenced on June 5, 2023. CR Docket No. 215.

**B.    Jury Trial**

The jury trial for Ms. Gross and Rusty Driscoll began as scheduled on August 1 and continued through August 4, 2023.  Docket Nos. 290-294.  The jury found Ms. Gross guilty of the sole count against her and the jury further determined that she was responsible for distributing at least 500 grams or more of a mixture or substance containing methamphetamine.  CR Docket No. 273 at pp. 2-3.  The court scheduled Ms. Gross' sentencing hearing for October 30, 2023.  CR Docket No. 284.

**C.    Presentence Investigation Reports and Objections**

**1.    Draft PSR**

A draft presentence investigation report (PSR) was filed on September 25, 2023.  CR Docket No. 298.  The PSR recounted the extensive testimony of witnesses at trial.  Id. at pp. 5-23.  This included the testimony of United States Postal Inspector Jonathan Grieme, who testified approximately 10 packages containing drugs were sent from either Kingman or Phoenix, Arizona, to South Dakota between July and October 2021, using the same account and the same credit card.  Id. at pp. 13-14.  Photos were taken of the persons who shipped these packages and Shauna Gross was depicted in six of the photos.  Id.  Multiple packages were sometimes sent on the same day from Arizona, and Shauna Gross was depicted in those photos from the same-day mailings wearing the same clothes.  Id.  For example, she sent two packages on September 7, 2021, and three packages on September 16, 2021, all from

Kingman to Dell Rapids or Canton, South Dakota, or Haynesville, Louisiana (from which packages were also sent to South Dakota).  Id.

Co-defendant Brandi Rinnet also testified at the trial.  Id. at pp. 15-16. She previously dated Sean Gross and had met Ms. Gross a handful of times over the years.  Id.  She testified Ms. Gross was aware of her son's methamphetamine distribution and positively identified Ms. Gross as the woman depicted in the photos from the mail kiosks sending the packages on September 7 and 16, 2021.  Id. at p. 16.

Co-defendant Jessica Johnson also testified at the trial.  Id.  She stated that Ms. Gross several times mailed Ms. Johnson methamphetamine in amounts ranging from 1 to 4 ounces at a time.  Id.

Drug Enforcement Administration (DEA) Special Agent Brandon Purcell also testified that it was Ms. Gross who mailed the five packages of drugs from Arizona to South Dakota on September 7 and 16.  Id. at pp. 15, 21.  Agent Purcell also testified to a wiretap he obtained on various suspects' phones in this drug conspiracy and specifically described phone calls between Ms. Gross and her son, Sean Gross, discussing details of financing in the conspiracy.  Id. at pp. 21-22.

Ms. Gross testified on her own behalf, disavowing any knowledge of methamphetamine dealing and asserting she believed her son was selling only marijuana for medicinal purposes.  Id. at p. 23.  She described mailing one package only at the request of Rusty Driscoll.  Id.  She testified this package contained a comforter for Driscoll's daughter's birthday.  Id.

6

The PSR credited Ms. Gross with 19.86 kilograms of methamphetamine based on the drugs recovered from the six packages she mailed from Arizona to South Dakota.  Id. at p. 24, ¶ 51.  Even though the 19.86 kg figure included tare weight, and even though the jury convicted Ms. Gross of conspiring to distribute a mixture or substance containing methamphetamine instead of pure meth, the PSR concluded it was "reasonable to assume the weight of methamphetamine far exceed[ed] 4.5 KG (actual)."  Id. ¶ 52.

The base offense level for 4.5 kilos under the United States Sentencing Guidelines (USSG) was 38, but because Ms. Gross was a minimal participant, the PSR used a base offense level of 34.  Id. at pp. 24-25, ¶ 57.  She received a further three-point downward adjustment for her role in the offense.  Id. at p. 25, ¶ 60.  Thus, the PSR calculated Ms. Gross' total USSG offense level to be a 31.  Id. ¶ 65.  She had one criminal history point, which placed her in criminal history category I.  Id. at p. 26, ¶ 71.

Using a total offense level of 31 and criminal history category I, the draft PSR calculated Ms. Gross' advisory USSG range to be 108 to 135 months.  Id. at p. 29, ¶ 92.  However, the offense Ms. Gross was convicted of carried a mandatory minimum term of imprisonment of 10 years (120 months), which resulted in her USSG range effectively being from 120 to 135 months' imprisonment.  Id.

### 2.    Objections to the Draft PSR

Mr. Angel filed an objection to the draft PSR as to the quantity of drugs attributed to Ms. Gross.  CR Docket No. 314 at p. 1.  Counsel pointed out that

7

there was no direct evidence that each package contained methamphetamine or, if the packages did, how much the drugs alone weighed.  Id.  Counsel argued it was inappropriate to count the weight of the packaging materials as drug weight.  Id.

The government also objected to the draft PSR.  CR Docket No. 315.  It argued Ms. Gross was an average participant in this drug conspiracy, not a minor participant, and that she had both mailed packages and distributed methamphetamine.  Id. at pp. 1-3.

### 3.  Final PSR

The PSR author issued a final PSR rejecting Ms. Gross' objections but adopting the government's objections.  CR Docket No. 318 at pp. 24-25 (maintaining the assessment of 4.5 kilos of actual methamphetamine but changing the base offense level from 34 to 38).  Using the new total offense level of 38 and a criminal history category of I, the final PSR calculated Ms. Gross' advisory USSG to be 235 to 293 months' imprisonment.  Id. at p. 29, ¶ 92.

### 4.  Objections to the Final PSR

Mr. Angel again asserted objections to the final PSR as well as a motion for a downward variance.  CR Docket Nos. 326 & 327.  The objections were now two-fold:  the original grounds for objecting to the drug quantity were reasserted and a new objection was made arguing that Ms. Gross should have been given a reduction for her minor role in the offense as was done in the draft PSR.  CR Docket No. 326.  In the motion for downward variance,

Mr. Angel argued that a sentence of 10 years (the mandatory minimum) was sufficient to achieve the ends of justice and that due to Ms. Gross' advanced age, ill health, and relatively minor criminal history the court should vary downward.  CR Docket No. 327.

**D.    Sentencing Hearing**

At the sentencing hearing, the court inquired whether Mr. Angel had reviewed the PSR with Ms. Gross.  CR Docket No. 335 at p. 3.  Mr. Angel indicated he had.  Id.  Ms. Gross did not contradict this representation.  Id.

The district court sentenced Ms. Gross to 140 months' imprisonment. CR Docket No. 330.  In so doing, the court sustained Mr. Angel's objection to the final PSR which asserted Ms. Gross *should* receive a downward adjustment for her lesser role in the offense.  CR Docket No. 335 at pp. 20-21.  The court overruled Mr. Angel's objection to the drug quantity set forth in the PSR, affirming the accuracy of the 4.5 kilograms of actual methamphetamine.  Id. at pp. 23-24.  A total offense level of 32 and a criminal history category of I yielded an advisory USSG range of 121 to 151 months' imprisonment the court found.  Id. at p. 24.

The court further found that Ms. Gross committed perjury at trial when she testified that she only mailed one package and that she did not know what the package contained.  Id. at pp. 30-31.  The court pointed out that the government had photographs of Ms. Gross mailing the six packages, thus showing that her testimony as to the number of packages she mailed (one) was

untrue.[2]  Id.  Because of the perjury committed by Ms. Gross, the court denied any adjustment to the USSG for acceptance of responsibility and also denied the motion for a variance, sentencing Ms. Gross to the middle of her USSG range.[3]  Id.

At the end of the sentencing hearing, the court informed Ms. Gross she had a right to appeal if she thought the court or the jury made a mistake.  Id. at p. 33.  The court instructed Ms. Gross that a notice of appeal must be filed with the clerk of courts office within 14 days from sentencing if she wished to appeal.  Id.  No appeal was filed.

### E.    Motion to Vacate, Set Aside or Correct Sentence

On April 22, 2024, Ms. Gross filed the motion to vacate, set aside, or correct her sentence that is now before the court.  Docket No. 1.  In that motion, Ms. Gross raised four claims that her trial attorney had rendered ineffective assistance of counsel in violation of her Sixth Amendment right to effective assistance of counsel.  Id. at p. 1.  Ms. Gross then filed a supplement to her original motion adding two additional claims of ineffective assistance of counsel.  Docket No. 21.  Ms. Gross filed a second supplement adding two more claims of ineffective assistance of counsel.  Docket No. 25.  She also appeared to add additional claims in her response to Mr. Angel's affidavit.

---

[2] In addition, Brandi Rinnet and Agent Purcell both testified that the photos from the mail kiosks depicted Ms. Gross.

[3] No USSG adjustment was made for perjury, however.

Docket No. 36.  In all, Ms. Gross articulates 6 separate claims[4] of ineffective

assistance of counsel:

> 1.    Counsel failed to file a direct appeal though Ms. Gross told him to do so.
>
> 2.    Counsel failed to move to sever Ms. Gross' trial from Rusty Driscoll's trial.  Ms. Gross was prejudiced thereby because Driscoll's trial involved repeated testimony about Shaunna *Daniels* distributing drugs and the jury mistook this testimony to apply to Shauna *Gross* because both co-defendants share the same first name.
>
> 3.    Counsel failed to show Ms. Gross her PSR, depriving Ms. Gross of the opportunity to object to the PSR on the grounds that:
>
>> (a) she was not a leader of the conspiracy,
>>
>> (b) she did not mail any packages for Sean Gross,
>>
>> (c) she was never found with any drugs and "there was no chain of custody for the package that was mailed by me,"
>>
>> (d) Ms. Gross was deprived of the ability to object that she was not responsible for any "ghost drugs," and
>>
>> (e) Ms. Gross was deprived of her opportunity to object to the PSR's use of a criminal conviction which had been expunged in the calculation of Ms. Gross' criminal history category.

---

[4] Although one could count 9 separate claims in the four pleadings, the court counts them as 6 for the following reasons.  Claims 2 and 3 from Ms. Gross' original petition are combined into one claim as in claim 2 Ms. Gross articulates the wrong she alleges counsel committed and in claim 3 she articulates how she was prejudiced by the alleged error set forth in claim 2. See Docket No. 1 at p. 1.  Ms. Gross repeats the claim that counsel failed to file an appeal though she told him to do so in two pleadings, so that is addressed as a single claim.  See Docket No. 1 at p. 1; Docket No. 25 at p. 1.  The claim Ms. Gross asserted in her second supplement was really a subset of the third claim she asserted in her first motion, so for purposes of this opinion, they are discussed as subsets of the argument that counsel failed to show Ms. Gross her PSR.  Compare Docket No. 1 at p. 1 with Docket No. 25 at pp. 2-3.

      4.    Counsel, due to a back ailment and the use of pain medications during trial, was physically and mentally unable to represent Ms. Gross.

      5.    Counsel failed to make a motion for a speedy trial violation when 928 days elapsed between Ms. Gross' arraignment and her trial.

      6.    Counsel failed to object when the government introduced evidence of lab tests done on the drugs seized without having the lab scientist testify, thereby violating Ms. Gross' rights under the Confrontation Clause.

See Docket Nos. 1, 21, 25, & 36 at p. 2.

The government now moves to dismiss Ms. Gross' § 2255 motion without holding an evidentiary hearing.  Docket No. 38.  Ms. Gross resists the government's motion.  Docket No. 42.

## DISCUSSION

### A.    Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  It allows a federal prisoner to move to "vacate, set aside or correct" a federal sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Where the allegation for relief is *not* based on a violation of a constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read § 2255 as containing a "fundamentality" requirement—relief is available

for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999) (noting collateral relief may be appropriate when a movant is prejudiced by a court's error).

Generally, movants are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 158-59, 167-68 (1982); United State v. Darden, 915 F.3d 579, 586 (8th Cir. 2019) (citations omitted) (finding proper standard for reviewing claims not raised on direct appeal is cause and prejudice).  When a § 2255 movant asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the movant has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001) (citation omitted).  Therefore, barring a claim of actual innocence, a movant must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.  If a movant fails to demonstrate prejudice, the court need not address whether cause exists to excuse a procedural default.  Cf. Moore-El v. Luebbers, 446 F.3d 890, 898 (8th Cir. 2006).

13

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell, 6 F.4th 764, 776 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (citation omitted) ("[I]neffective assistance of counsel [claims] are generally not cognizable on direct appeal" and "may be heard only if a miscarriage of justice would otherwise result . . . or if the district court has developed a record on the issues.").  Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally deficient counsel.

**B.     Standard for Ineffective Assistance of Counsel**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. CONST. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Strickland is the benchmark case for determining whether counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  United States v. Kehoe, 712 F.3d 1251, 1253 (8th Cir. 2013).

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at

14

687-88.  The defendant must also show that counsel's unreasonable errors or

deficiencies prejudiced the defense and affected the judgment.  <u>Id.</u> at 691.  The

defendant must show, "there is a reasonable probability that, absent the

errors, the factfinder would have had a reasonable doubt respecting guilt."  <u>Id.</u>

at 695.  In sum, a defendant must satisfy the following two-prong test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.  Second, the defendant must
> show that the deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.  Unless
> a defendant makes both showings, it cannot be said that the
> conviction or death sentence resulted from a breakdown in the
> adversary process that renders the result unreliable.

<u>Id.</u> at 687.

"There is a presumption that any challenged action was sound trial

strategy and that counsel rendered adequate assistance and made all

significant decisions in the exercise of professional judgment."  <u>Hall v.</u>

<u>Luebbers</u>, 296 F.3d 685, 692 (8th Cir. 2002) (citation omitted).  It is the

movant's burden to overcome this presumption, and a movant "cannot build a

showing of prejudice on a series of errors, none of which would by itself meet

the prejudice test."  <u>Id.</u> (citation omitted).  Counsel's conduct must be judged

by the standards for legal representation which existed at the time of the

representation, not by standards promulgated after the representation.  <u>Bobby</u>

<u>v. Van Hook</u>, 558 U.S. 4, 7-9 (2009) (*per curiam*).  " 'American Bar Association

standards and the like' are 'only guides' to what reasonableness means, not its

definition."  <u>Id.</u> at 8 (quoting <u>Strickland</u>, 466 U.S. at 688).

The Supreme Court distinguishes between those cases "in which the new evidence 'would barely have altered the sentencing profile presented to the sentencing judge,' " and those that would have had a reasonable probability of changing the result. <u>Porter v. McCollum</u>, 558 U.S. 30, 41 (2009) (*per curiam*) (quoting <u>Strickland</u>, 466 U.S. at 700). In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding" and "reweigh it against the evidence in aggravation." <u>Id.</u> at 40-41 (citation omitted). It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." <u>Id.</u> at 44 (quoting <u>Strickland</u>, 466 U.S. at 693-94) (alteration in original). "Judicial scrutiny of counsel's performance must be highly deferential" with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.

**C.    Application of <u>Strickland</u> to Ms. Gross' Claims**

**1.    Counsel Failed to File an Appeal**

Ms. Gross alleges she instructed Mr. Angel to file an appeal and he did not do so. Mr. Angel convincingly contests this assertion with specific details and dates of conversations and a copy of a letter he provided to Ms. Gross at the conclusion of his representation. Docket No. 34.

"[A]n attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to

section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary." Carnnahan v. United States, 778 Fed. Appx. 404, 405 (8th Cir. 2019) (*per curiam*) (quoting Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000). "This remains true 'even if the client waived her right to appeal as part of a plea agreement.' " Id. (cleaned up) (quoting United States v. Sellner, 773 F.3d 927, 930 (8th Cir. 2014) and citing Garza v. Idaho, 139 S. Ct. 738, 744-45 (2019)). "In general 'where a petitioner's allegations, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record affirmatively refutes the factual assertions upon which the claim is based.' " Id. (cleaned up) (quoting Watson v. United States, 493 F.3d 960, 964 (8th Cir. 2007)). "Indeed, 'if neither party's statement is facially incredible and both contain similar specificity regarding when the alleged appeal-request conversations took place (or did not take place), counsel's contrary statement is insufficient to support a finding that the petitioner's allegations cannot be accepted as true.' " Id. at 405-06 (cleaned up) (quoting Witthar v. United States, 793 F.3d 920, 923 (8th Cir. 2015)).

Failure to pursue an appeal that has been requested by a client is deficient attorney performance *per se.* Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). "In such a case, prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error." Watson v. United States, 493 F.3d 960, 963-64 (8th Cir. 2007) (citing Flores-Ortega, 528 U.S. at 483-84). A defendant has "the ultimate authority" to determine "whether . . . to take an appeal." Florida v. Nixon, 543 U.S. 175,

187 (2004) (citations omitted).  As a matter of law, the right to appeal is one that can be waived only by the defendant himself, not by counsel.  Id.

It is axiomatic that the movant must show that she asked her trial counsel to file an appeal.  Barger, 204 F.3d at 1182 (citing Holloway v. United States, 960 F.2d 1348, 1356-57 (8th Cir. 1992)).  But that does not mean that a bare assertion is enough to merit an evidentiary hearing.  Holloway, 960 F.2d at 1358.  Where the written record is conclusive, the court can rule on the claim without holding an evidentiary hearing.  United States v. Robinson, 171 Fed. App'x 536, 537 (8th Cir. 2006) (citing, inter alia, Holloway, 960 F.2d at 1357) (hearing should be held where the record is inconclusive).

There have been cases where the Eighth Circuit has held no evidentiary hearing is necessary.  For example, where a § 2255 movant claimed he told his counsel to appeal, but counsel submitted an affidavit specifically denying this, and counsel's affidavit was supported by a contemporaneous letter counsel sent to petitioner at the time an appeal would have been pursued, the Eighth Circuit held it was not error to dismiss the petitioner's claim without an evidentiary hearing.  Rodriguez v. United States, 964 F.2d 840, 841-42 (8th Cir. 1992) (per curiam).  A similar conclusion was reached by the Northern District of Iowa in Sanguino v. United States, where the petitioner's claim was supported by nothing more than a bare assertion.  Nos. C 07-4057-MWB / CR 06-4026-MWB, 2009 WL 2922038, at *6 (N.D. Iowa Sept. 8, 2009).

In the Watson case, the district court was reversed where it denied habeas relief to a petitioner who alleged that he had requested an appeal and

that his trial counsel had refused to appeal. 493 F.3d at 964. The Eighth Circuit stated that the district court "was not required to credit Watson's assertion" that he wanted to appeal. Id. But because there was no evidence in the record refuting that assertion, the district court could not *discredit* the assertion without first holding an evidentiary hearing to evaluate Watson's credibility. Id.; see also Barger, 204 F.3d at 1182 (affirming district court's denial of habeas relief on a failure-to-appeal ineffective assistance claim where the court discredited the petitioner's testimony *after an evidentiary hearing* at which both the attorney and the petitioner testified).

Here, Ms. Gross' allegation that she asked Mr. Angel to appeal for her can be characterized as threadbare, but she does affirmatively make the assertion. Mr. Angel's contradiction of that assertion is rich with detail and supporting documentation. Still, the court cannot say that Ms. Gross' allegation is completely devoid of substance. The government acknowledges that an evidentiary hearing is called for on this issue. Docket No. 39 at pp. 17-18. For that reason, the court recommends an evidentiary hearing be held on this claim only so that the court may make a credibility determination on this point of conflicting fact. The government's motion to dismiss the failure-to-appeal claim should not be dismissed at this point.

### 2.    Counsel Failed to Move to Sever

Ms. Gross alleges counsel was ineffective for failing to move to sever her trial from the trial of Rusty Driscoll. Docket No. 1 at p. 1. Both defendants were charged in the same indictment with participating in the same conspiracy

to distribute methamphetamine.  CR Docket No. 1.  Rule 8(b) states the

following concerning joinder of defendants:

> The indictment . . . may charge 2 or more defendants if they are
> alleged to have participated in the same act or transaction, or in
> the same series of acts or transactions, constituting an offense or
> offenses.  The defendants may be charged in one or more counts
> together or separately.  All defendants need not be charged in each
> count.

FED. R. CRIM. P. 8(b).  The joinder of Ms. Gross with Driscoll in the indictment

was proper under Rule 8(b).

However, even if joinder is proper under Rule 8(b), a defendant may still

seek severance if the joinder "appears to prejudice a defendant."  FED. R. CRIM.

P. 14(a).  "Once defendants are properly joined under Rule 8, there is a strong

presumption for their joint trial."  United States v. Jenkins-Watts, 574 F.3d

950, 967 (8th Cir. 2009) (citations omitted).  A defendant seeking severance in

a properly joined case bears a "heavy burden" to show that she will be

"deprived of an appreciable chance for an acquittal" that would be present in a

solo trial or to demonstrate that "the jury will be unable to compartmentalize

the evidence as it relates to separate defendants."  United States v. Wadena,

152 F.3d 831, 848 (8th Cir. 1998); United States v. Payton, 636 F.3d 1027,

1037 (8th Cir. 2011).

Co-defendants who are charged with a conspiracy are generally "tried

together, especially where the proof of charges against each of the defendants

is based on the same evidence."  United States v. O'Meara, 895 F.2d 1216,

1218 (8th Cir. 1990) (citation omitted).  "Joint trial is generally favored in such

cases."  United States v. Williams, 95 F.3d 723, 732 (8th Cir. 1996).

20

Mr. Angel understood it would be very difficult to obtain a severance of Ms. Gross' trial from Driscoll's, as evidenced by the above caselaw.  Docket No. 34 at p. 5, ¶ 13.  He articulated strategic reasons for wanting to try Ms. Gross' case with Driscoll's:  counsel felt that the evidence against Driscoll, which indicated he played an outsized role in the drug conspiracy, would compare favorably in the jury's estimation with Ms. Gross' relatively minor role.  Id. ¶ 15.

Informed strategic decisions by defense counsel are "virtually unchallengeable" on collateral review.  Strickland, 466 U.S. at 690.  It was not unreasonable for Mr. Angel to believe that the government's evidence of Driscoll's extensive involvement in the conspiracy would compare favorably to Ms. Gross' relatively minor involvement in the minds of the jurors.  Furthermore, Mr. Angel's belief that a severance motion would not likely be granted was well-grounded in the law of the Eighth Circuit.  The court concludes that Ms. Gross has failed to demonstrate that Mr. Angel rendered deficient performance by not making a motion to sever her trial from that of Driscoll's.

Because the court concludes that Ms. Gross failed to demonstrate the first prong of the Strickland test (deficient attorney performance), the court need not address her argument that she was prejudiced due to having the same first name as another co-defendant, Shaunna Daniels.  However, as to this allegation, the court notes Ms. Gross produces no proof that the jury was confused.

### 3.    Counsel Failed to Show Ms. Gross Her PSR

Ms. Gross makes the bald assertion that counsel did not "give me my presentence report." Docket No. 1 at p. 1. She also states she "would have objected to my presentence report if I was given a copy or had a chance to review it." Docket No. 25 at p. 2. Mr. Angel provided an affidavit in response to Ms. Gross' allegations of ineffective assistance in which he states he *did* review Ms. Gross' PSR in its entirety with her on October 8, 2023, and again on November 2, 2023. Docket No. 34 at p. 1, ¶ 2; p. 2, ¶ 3.

Ms. Gross filed a response to Mr. Angel's affidavit. Docket No. 36. In that document she clarifies that her complaint is *as to timing*: she asserts Mr. Angel did not show her her PSR at least 35 days prior to her sentencing and he did not file objections to the PSR 14 days before sentencing. Id. at p. 3. Ms. Gross does not dispute Mr. Angel's specific statements that he showed Ms. Gross her PSR on October 8 and November 2. Id.

First, the court finds—because Ms. Gross does not dispute it—that Mr. Angel *did* review Ms. Gross' PSR with her on October 8 and November 2. Not only is this conclusion warranted because Ms. Gross does not dispute it, but it is also supported by the contemporaneous record created at the sentencing hearing when the court asked Mr. Angel if he had reviewed the PSR with Ms. Gross and Mr. Angel responded affirmatively. CR Docket No. 335 at p. 3. Ms. Gross did not dispute this representation at the time of sentencing. Id.

As to timing, the court notes that the 35-day requirement is a creature of rule, not a constitutional mandate.  It derives from Federal Rule of Criminal Procedure 32(e)(2), which states:  "The *probation officer* must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period."  (emphasis supplied).

As can be seen from the rule, the person required to disclose the report 35 days in advance of sentencing is the *probation officer*, nothing is stated in the rule about defense counsel's required time period for disclosure.  See FED. R. CRIM. P. 32(e)(2).  The probation officer disclosed the PSR on September 25, which is 39 days prior to the sentencing hearing.  Docket Nos. 298 & 328. Rule 32(e)(2) was not violated in Ms. Gross' case.

Mr. Angel first disclosed Ms. Gross' PSR to her on October 8, 26 days before the sentencing hearing.  This is not so short a period as to implicate Ms. Gross' constitutional rights.

As to the timeliness of objections, Mr. Angel filed his first set of objections on October 9, the day after first meeting with Ms. Gross to review the draft PSR.  CR Docket No. 314.  This was more than 14 days prior to sentencing.

Also, after the final PSR was filed on October 20, Mr. Angel reiterated his original objection, which had not resulted in a change to the PSR, as well as asserted a new objection based on the probation officer's adoption of the government's objection.  CR Docket No. 326.

All of Mr. Angel's objections were addressed on their merits by the district court at sentencing, so even if Mr. Angel's latter objections were not filed within 14 days of the sentencing hearing, there was no prejudice as a result.  The court addressed those objections on the merits and granted one of the objections.  CR Docket No. 335 at pp. 15-24.  The court rejects Ms. Gross' timing objections to the disclosure of the PSR and to the filing of objections to the PSR.  She has failed to demonstrate deficient attorney performance or prejudice as to either timing issue.

### a.    Leader of the Conspiracy

Moving on to the merits of Ms. Gross' allegations tied to the PSR, she claims if she had been shown the PSR she would have objected to her USSG adjustment for being a leader of the conspiracy.  But, as discussed above, she was never determined to be a leader of the conspiracy in the PSR.  Rather, in the draft PSR she was given a minor role adjustment, in the final PSR this downward adjustment for having a minor role was removed, and at the sentencing hearing the district court restored the minor role adjustment.  At no time did any PSR assert Ms. Gross should be considered a leader, organizer or manager of the conspiracy.  Thus, any objection that such an enhancement should not have been made would have been unavailing and irrelevant.  On these facts, Ms. Gross cannot show Strickland prejudice.

### b.    Never Mailed Any Packages

Ms. Gross argues if she had been shown the PSR she would have objected to the part of the PSR that stated she was responsible for mailing six

packages.  She claims, as she did at trial, that she only mailed one package and she had no knowledge that the package contained methamphetamine.

Because Ms. Gross (via Mr. Angel) objected to the drug quantity set forth in the PSR, specifically that there was no evidence that the packages she mailed contained methamphetamine or how much of the overall weight of the packages constituted drugs,[5] the government presented testimony at the sentencing hearing of Special Agent Brandon Purcell of the DEA.  CR Docket No. 335 at p. 4.

Agent Purcell testified first about the package mailed by Ms. Gross on August 28, 2021.[6]  Id.; CR Docket No. 275 at p. 171.  Agent Purcell testified the package weighed 13 pounds.  CR Docket No. 335 at p. 4.  It was sent to Michael Berhow's home in Egan, South Dakota, from which location co-defendant Christopher Daniels retrieved it and transferred the package to another co-defendant's home.  Id. at p. 5.  The following day a cooperating defendant informed Agent Purcell that Mr. Daniels was in possession of 8 pounds of methamphetamine at the Super 8 Hotel in Sioux Falls.  Id.  Agents verified that Mr. Daniels' motorcycle and his cell phone were at the Super 8. Id.

Later that day, agents followed Mr. Daniels from the Super 8 to Vermillion, South Dakota, where he made a money payoff to Sean Gross, his

---

[5] See CR Docket No. 326 at p. 1.

[6] This testimony related to government's trial exhibit 93, which exhibit included a photograph of Ms. Gross taken by the kiosk machine as she mailed the package.  See CR Docket No. 275 at p. 171.

source of supply.  Id.  Another co-conspirator later told investigators that she had brought the cooperating defendant to the Super 8 to meet with Daniels on the day in question, thus corroborating the cooperator's information.  Id.

Agent Purcell then testified about the package mailed by Ms. Gross on September 7, 2021.[7]  Id. at p. 6; CR Docket No. 275 at p. 165.  The package was delivered to Mr. Daniels' in-laws' house in Dell Rapids.  CR Docket No. 335 at p. 6.  Mr. Daniels retrieved the package and brought it to co-defendant Shayanne Crow's house.  Id.  Ms. Crow told agents the package, which contained a large amount of methamphetamine and a comforter, was broken down at Ms. Crow's house.  Id. at pp. 6-7.

Agents also intercepted phone calls between Mr. Daniels and Natalie Sprayberry, an inmate in the South Dakota Women's Prison, in which Mr. Daniels indicated the package would contain 18 pounds of methamphetamine.  Id. at p. 7.  In a follow-up phone call, co-conspirator Damien Lamb can be heard in the background saying that he is going to have a hard time breaking the drugs down because it was such a large quantity.  Id. at pp. 7-8.  Contemporaneous (within 2 days of delivery) photos taken of the drugs delivered in this 18-pound package depict a quantity of 6 to 10 pounds of methamphetamine packaged in pound quantities in individual Ziploc bags. Id. at pp. 7-9.

---

[7] This testimony related to government's trial exhibit 87, which exhibit included a photograph of Ms. Gross taken by the kiosk machine as she mailed the package.  See CR Docket No. 275 at p. 165.

Agent Purcell also testified about another package as to which evidence was not presented at Ms. Gross' trial. Id. at p. 10. This package was sent the same day as the 18-pound package and the package was sent to Topeka, Kansas. Id. When the package was seized by investigators, it was found to contain approximately 4,000 fentanyl pills.[8] Id. Agent Purcell testified that all 3 of the packages he testified about were sent from the same kiosk. Id. Photographic images from that kiosk showed that it was Ms. Gross who sent all 3 packages. Id.

The court made a finding that, based on the evidence presented at trial and based on Agent Purcell's testimony at the sentencing hearing, Ms. Gross mailed six packages, some of which were sent to South Dakota and some to Louisiana. Id. at p. 23. Based on the testimony about just the two packages Agent Purcell testified to at the sentencing hearing, the court found there were 8 pounds of methamphetamine in the 13-pound package and 6 to 10 pounds of meth in the 18-pound package (a minimum total of 14 pounds). Id.

The court further found that the evidence at trial established a purity level of the methamphetamine distributed in this conspiracy to be between 89-percent and 100-percent pure. Id. The court concluded that, even applying an 89-percent purity level, the minimum of 14 pounds of meth contained in the two packages Agent Purcell testified about would amount to more than 4.5

---

[8] Ms. Gross was never charged with involvement in the distribution of fentanyl, the jury did not convict her of criminal acts involving fentanyl, and the PSR did not include any consideration of fentanyl in determining Ms. Gross' base offense level under the USSG. Thus, the evidence of this third package appears to be somewhat gratuitous.

kilograms of actual methamphetamine, the minimum needed to trigger a base offense level of 38 under the USSG.[9] Id. Therefore, the court rejected Ms. Gross' objection to the drug quantity found in the PSR. Id. at pp. 23-24.

In essence, Mr. Angel's objection served the same purpose as the objection Ms. Gross now says she would have asserted had she seen the PSR: it put the government to the burden of proving that Ms. Gross actually mailed the two packages in question and that the quantity of methamphetamine in those two packages was sufficient to trigger a USSG base offense level of 38. The court finds that Mr. Angel's performance was not deficient. The objection he raised had the same effect Ms. Gross' objection would have had. And it would have had the same result—the objection would have been overruled by the court. There was ample indisputable evidence that Ms. Gross mailed the packages in question and that they contained the stated amounts of methamphetamine.

### c.    No Drugs on Ms. Gross and Lack of Chain of Custody

Ms. Gross also argues that if she had seen the PSR, she would have objected on the basis that the government never showed she had drugs in her possession and, because the government did not seize the packages in question, there was no chain of custody for the drugs. This is simply another way of stating her claim that the government did not prove its case against her. The jury and the district judge at the sentencing hearing found otherwise. This

---

[9] Fourteen pounds equates to 6.35 kilograms. Eighty-nine percent purity of 6.35 kilos is 5.65 kilos of actual meth, which is more than the minimum of 4.5 kilos of actual meth required under the USSG.

magistrate judge recommends this claim of ineffective assistance of counsel be dismissed.

### d.    Not Responsible for "Ghost Drugs"

Ms. Gross does not elaborate as to what she means by "ghost drugs," but the court takes it to mean the government never caught her red-handed with drugs in her possession.  This is simply another argument by Ms. Gross that the government did not prove its case against her.  The court recommends that this claim of ineffective assistance of counsel be dismissed.

### e.    Use of an Expunged Conviction in Criminal History

Ms. Gross asserts if she had seen the PSR, she would have objected to the assessment of a criminal history point because the conviction in question had been expunged.  Docket No. 25 at pp. 2-3.  Ms. Gross produces no proof that she had a conviction that had been expunged.  Mr. Angel states in his affidavit that Ms. Gross never contemporaneously indicated to him that her prior conviction had been expunged.  Docket No. 34 at p. 3, ¶ 10.

The final PSR accorded Ms. Gross one criminal history point for a February 17, 2022, conviction in a Kingman, Arizona, state court for possession of drug paraphernalia.  CR Docket No. 318, p. 25, ¶ 69.  This was the only criminal history point attributed to Ms. Gross.  Id. at pp. 25-26.  The presence of one criminal history point placed Ms. Gross into criminal history category I, the very lowest criminal history category in the USSG.  Id. at p. 26, ¶ 71.

29

Even if Ms. Gross had been accorded zero criminal history points, she would still have been in criminal history category I as that is the lowest category possible.  Failure by counsel to object to the one point accorded to Ms. Gross would not have altered her criminal history category.  She would still be in criminal history category I if counsel had objected and if the court had sustained that objection.

### 4.    Counsel Was Physically and Mentally Incapacitated

Ms. Gross alleges that her lawyer was in back pain and taking pain medications throughout her trial and that his pain and the medication incapacitated him both mentally and physically to such an extent he was no longer functioning as constitutionally effective counsel.

Mr. Angel addressed this in his affidavit.  Docket No. 34 at pp. 5-7. Mr. Angel acknowledged that he sustained an injury in mid-July 2023.  Id. at p. 5.  His doctor released him to regular activities after two weeks or when his condition improved.  Id.  Ms. Gross' trial was August 1-4, 2023, after the restrictions on activity imposed by Mr. Angel's physician had expired.  Id.

Counsel stated under oath that he felt capable of trying Ms. Gross' case. Id.  He stated that if he had not felt capable of representing Ms. Gross at trial, or if he felt she would be at an increased risk of conviction due to his condition, Mr. Angel would have moved for a continuance of the trial date.  Id.

Mr. Angel never took any pain medication during Ms. Gross' trial.  Id. at pp. 5-6.  He specifically refrained from doing so for two reasons:  (1) he did not want to affect his trial performance and (2) he was driving his vehicle to and

from court and did not want to drive impaired.  Id.  After the third day of

Ms. Gross' trial, Mr. Angel took pain medication that night.  Id. at p. 6.  To the

best of his memory, this was the only time he took any pain medication during

trial.  Id.

Mr. Angel stated he was in pain during trial at times, and it was a

distraction at times, but he did not feel the pain adversely affected his

performance.  Id.  Once, on the third day of the jury trial during afternoon

recess, Mr. Angel did lie down *outside* the presence of the court or the jury.  Id.

This happened only once during the trial.  Id.  Neither the court nor the jury

witnessed Mr. Angel lying down.  Id.

Ms. Gross alleges Mr. Angel committed four errors of constitutional

magnitude due to being in pain and taking pain medications:  (1) he failed to

move to sever her trial from that of Rusty Driscoll's, (2) he failed to object to

hearsay testimony that violated the Confrontation Clause, (3) he failed to show

her the PSR, and (4) he failed to appeal when she asked him to do so.  Docket

No. 36.   Each of these allegations is addressed separately elsewhere in this

opinion.

There is nothing about counsel's injury or his taking of pain medication

after the third day of trial that would conclusively show deficient performance

by counsel or prejudice to Ms. Gross.  Instead, it is incumbent upon Ms. Gross

to demonstrate how these conditions caused Mr. Angel to make actual

mistakes in representing Ms. Gross that prejudiced her.  Hochstein v. Hopkins,

113 F.3d 143, 147 (8th Cir. 1997) (it is petitioner's burden to show that his

attorney's alleged mental, physical and emotional problems were of constitutional magnitude); Lamasters v. Warden, Iowa State Penitentiary, No. C13-2003, 2014 WL 4961470, at *6 (N.D. Iowa Sept. 11, 2014) (state court rejected claim of ineffective assistance of counsel where petitioner alleged counsel was mentally and physically exhausted, but petitioner failed to demonstrate that counsel failed in any essential responsibility to petitioner); Ehlert v. United States, Civil No. 3:08-CV-102, 2008 WL 5076996, at *4 (D.N.D. Nov. 24, 2008) (rejecting claim of counsel's alleged physical and mental incapacitation as conclusory where petitioner established no evidence that his case was affected in any way).

Ms. Gross has failed to carry her burden. The court recommends rejecting Ms. Gross' claim of ineffective assistance of counsel based on Mr. Angel's back injury and medication.

### 5.    Counsel Failed to Make a Speedy Trial Motion

Ms. Gross alleges counsel was ineffective for failing to move to dismiss her case on the grounds that her speedy trial rights were violated. Docket No. 21 at p. 1. She states that over 928 days elapsed between the date of her arraignment and the date of her trial. Id. There are two sources of a criminal defendant's right to a speedy trial: (1) statutory: the Speedy Trial Act (STA), 18 U.S.C. § 3161; and (2) constitutional: the guarantee of a speedy trial under the Sixth Amendment to the United States Constitution. United States v. Antwine, 873 F.2d 1144, 1148 (8th Cir. 1989). Because it is unclear which of these

bases Ms. Gross is relying on for her claim of ineffective assistance of counsel, the court analyzes both grounds.

### a.    The Statutory STA

The STA provides in pertinent part as follows:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendants has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

See 18 U.S.C. § 3161(c)(1).

The STA sets forth several periods of delay which are excluded from computing the 70 days within which the defendant must be tried.  See 18 U.S.C. § 3161(h).  Among those excluded periods of delay is the following:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.  No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

See 18 U.S.C. § 3161(h)(7)(A).

The statute then sets forth various factors the court should consider in deciding whether to grant a continuance pursuant to subparagraph (h)(7)(A).  Among those factors are whether failure to grant a continuance may result in a miscarriage of justice, whether the case is very unusual or complex, whether

denial of a continuance would deprive the defendant or the government of continuity of counsel or a reasonable time necessary for effective trial preparation.  See 18 U.S.C. § 3161(h)(7)(B).

The STA clock starts running (1) when the indictment is filed and made public **or** (2) when the defendant makes his initial appearance "before a judicial officer of the court in which such charge is pending," whichever is later.  See 18 U.S.C. § 3161(c).  Here, Ms. Gross' indictment was filed on December 7, 2021. See CR Docket No. 1.  Ms. Gross made her initial appearance in the District of South Dakota on February 3, 2022.  CR Docket No. 29.  Under § 3161(c)(1), the latter of these two events—the initial appearance in South Dakota—triggered the 70-day STA clock.  The "court in which such charge is pending" as described in § 3161(c)(1) is the District of South Dakota, not the District of Arizona.  See United States v. Grimes, 702 F.3d 460, 466-67 (8th Cir. 2012). Therefore, Ms. Gross' STA clock began to run upon her initial appearance on February 3, 2022, in the District of South Dakota.  Id.

As set forth in detail above in the FACTS section of this opinion, after February 3, 2022, eight motions for continuances were filed, six of which were granted.  Seven of these motions were filed by Ms. Gross' co-defendants and the last one was filed by Ms. Gross herself.

In the motions filed by Ms. Gross' co-defendants, the motions recited that Ms. Gross did not object to the continuances sought.  After a co-defendant filed the seventh motion to continue, a status conference was held at which Ms. Gross' counsel was present.  CR Docket Nos. 156 & 160.  At no time did Ms.

Gross object to any of her co-defendants' motions for continuances, she did not object at the status conference, and she affirmatively sought the final continuance.  Ms. Gross has shown no contemporaneous evidence that she objected to any of these continuances.  Counsel could not object to a continuance if his own client did not object.

Ms. Gross has failed to show counsel's performance was deficient or that she was prejudiced by her counsel's performance with regard to the STA issue. Accordingly, the court recommends that Ms. Gross' motion to vacate, set aside, or correct her sentence based on ineffective assistance of counsel as to the STA issue be denied.

### b.    Sixth Amendment Guarantee of a Speedy Trial

The Sixth Amendment also provides a speedy trial guarantee:  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. CONST. amend. VI.  In Thomas v. United States, 737 F.3d 1202, 1205 (8th Cir. 2013), a § 2255 movant argued his trial counsel had been ineffective because his Sixth Amendment right to a speedy trial was violated and counsel did not move to dismiss the indictment against him.  The court analyzed the issue by noting that an accused has the "ultimate authority to make certain fundamental decisions regarding the case" while the province of the attorney is to make tactical trial strategy decisions.  Id. at 1207 (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983) (other citations omitted)).

The Supreme Court has recognized only four "fundamental" decisions belonging solely to the accused:  the decision "whether to plead guilty, waive a

jury, testify in his or her own behalf, or take an appeal." Id. at 1208 (quoting Jones, 463 U.S. at 751). The Eighth Circuit noted that the speedy trial right guaranteed by the Sixth Amendment is not among these four enumerated decisions reserved to the accused. Id. Nor is it like any of those four decisions. Id.

The court noted that the four enumerated decisions are easily understood by the accused from the perspective of a lay person. Id. The choices involve alternatives easy for a person untrained in the law to understand (i.e. admit guilt or not), while the speedy trial right decision can involve "the complicated weighing of factors and predicting of possible outcomes." Id. Delay is not necessarily a disadvantage to an accused but can be a strategic advantage. Id. Therefore, a denial of a speedy trial is not an automatic violation of the Sixth Amendment, but it is subject to a balancing test. Id.

Given the nature of the right to a speedy trial, the Eighth Circuit held it was not a fundamental right reserved solely for the accused to invoke. Id. at 1208-09. Instead, whether to assert the speedy trial right was a strategic decision reserved to the lawyer to make. Id. In Thomas' case, counsel had identified reasons for not moving to enforce Thomas' speedy trial rights. Id. at 1209. Thomas did not dispute the lawyer's rationale; Thomas complained only that the lawyer allegedly did not consult with him before making the decision. Id. The Eighth Circuit held that counsel's decision whether to assert the speedy trial claim was a tactical decision which counsel was entitled to

36

"properly make without his client's input."  Id.  Therefore, since Thomas' only argument was that counsel failed to confer with him, and because counsel gave reasons for making this tactical decision, Thomas could not obtain relief under § 2255.  Id.

The Thomas case forecloses relief to Ms. Gross.  Counsel provided reasons why he sought the eighth and final continuance on Ms. Gross' behalf: he needed the extra time to prepare for trial, Ms. Gross had an abuse and neglect state court proceeding that she wished to attend before her federal criminal trial, and Ms. Gross herself wished to have trial continued due to ill health.  CR Docket Nos. 196 & 198-1.

Furthermore, counsel requested only a 60-day delay, which in itself was reasonable.  Id.  Finally, Ms. Gross signed an explicit consent to the continuance filed on her behalf, stating that she had been advised of her rights under the STA and the Sixth Amendment and that she voluntarily and knowingly waived those rights.  CR Docket No. 197.

This court notes that Ms. Gross, like the movant in Thomas, never disputed counsel's stated reasons for asking for the continuance:  i.e. that he needed additional time to prepare for trial or that Ms. Gross herself wanted the continuance to attend to the state court proceedings and to attend to her health.  She never claims this was a ruse or untruthful.  Under these circumstances, like the movant in Thomas, Ms. Gross is not entitled to relief under § 2255.  Thomas, 737 F.3d at 1209.  Accordingly, this court

recommends dismissing Ms. Gross' Sixth Amendment speedy trial claim on the merits because she has not shown deficient performance by counsel.

In addition, Ms. Gross has failed to demonstrate prejudice.  As the Supreme Court has recognized, delay often favors a criminal defendant.  Barker v. Wingo, 407 U.S. 514, 521 (1972).  Without a showing by Ms. Gross of how the 60-day delay occasioned by counsel's motion harmed her, she cannot meet the second prong of the Strickland test.  She points to no evidence that was lost as a result of the delay nor any other adverse development.  The court finds Ms. Gross' claim fails under both Strickland prongs.

### 6.    Counsel Failed to Object to Hearsay Testimony Which Violated Ms. Gross' Confrontation Rights

Ms. Gross, in response to Mr. Angel's affidavit, raises a sixth claim of ineffective assistance of counsel.  Docket No. 36 at p. 2.  She argues that Agent Purcell was allowed to testify to hearsay about the drug quantities and purities instead of having the lab analysts testify to this information.  Id.  Ms. Gross asserts that the lab testimony was testimonial evidence and, therefore, that the government was required to call the lab analysts themselves to testify rather than allowing Agent Purcell to testify about the lab analysts' findings via hearsay.  Id.  Ms. Gross asserts her lawyer was constitutionally ineffective for failing to object to Agent Purcell's hearsay testimony.  Id.

At trial, no such hearsay was introduced.  Instead, the government called two forensic chemists who worked for the DEA, Ticia Eccardt and Tolulope Omosun, to establish weights and purities of drugs.  See Docket No. 318 at p. 15, ¶ 29; and p. 20, ¶ 41.  Therefore, Ms. Gross' Confrontation Clause rights

were never violated at trial.  Any objection by counsel during trial based on the Confrontation Clause would have been overruled.  Counsel's performance at trial was not deficient.

At sentencing, only Agent Purcell testified for the government, but he did not offer hearsay testimony regarding the weight or purity of the drugs derived from lab testing.  CR Docket No. 335 at pp. 4-14.  Even if Agent Purcell had offered such testimony, the Confrontation Clause does not apply at sentencing hearings.  United States v. Still, 6 F.4th 812, 818 (8th Cir. 2021) (citation omitted).  In fact, the rules of evidence do not apply at sentencing hearings and hearsay is generally admissible.  United States v. Pratt, 553 F.3d 1165, 1170 (8th Cir. 2009); see United States v. Wise, 976 F.2d 393, 404 (8th Cir. 1992).  Any objection by defense counsel to Agent Purcell's sentencing testimony on the basis of the Confrontation Clause would have been overruled.  Counsel's performance at sentencing was not deficient.

**D.    Motion for Bail**

Ms. Gross filed a motion for bail in this habeas action.  Docket No. 3.  She asserts that she has raised a substantial question of law or fact that is fairly debatable and that, if that question is decided in her favor, the likely outcome will be reversal, an order overturning her conviction, or a sentence with a term of imprisonment less than time served.  Id.  The court has not found that Ms. Gross has raised a substantial question of law or fact that is fairly debatable with the exception of her claim that counsel failed to appeal when she asked him to.

The court recommends denying Ms. Gross' motion for bail. Should the court issue a decision favorable to her on the failure to appeal claim, the result would not be immediate release. Rather, Ms. Gross would be allowed to file an appeal. There is nothing in Ms. Gross' filings to date that leads this court to believe an appeal would result in the overturning of her conviction or sentence.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 38] as to all claims raised by Ms. Gross except her claim that counsel was ineffective for failing to file an appeal after Ms. Gross instructed him to do so. On that sole claim this court recommends that an evidentiary hearing be held.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 13th day of August, 2024.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

40